**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JAVON W.,

                              Plaintiff,

v.                                                          3:17-CV-1230
                                                            (CFH)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

LACHMAN, GORTON LAW FIRM          PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorneys for plaintiff

U.S. SOCIAL SECURITY ADMIN.          SERGEI ADEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for defendant

**CHRISTIAN F. HUMMEL,**
**United States Magistrate Judge**

### MEMORANDUM-DECISION & ORDER

        Currently pending before the Court,[1] in this Social Security action filed by Javon

W.[2] ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

_____

[1]  Parties consented to review of this matter by a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and N.D.N.Y. General Order 18.  Dkt. No. 8.

[2]  In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision & Order will identify the plaintiff by her first name and last initial.

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 13 and 14.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

## I. BACKGROUND

### A. Facts

Plaintiff was born in 1982, making him 33 years old at the date of the ALJ's decision. Plaintiff reported graduating from high school with a history of enrollment in special education courses. Plaintiff has past work as a cook. At the initial level, Plaintiff alleged disability due to epilepsy and related seizures, insomnia, explosive temper disorder, attention deficit disorder and attention deficit hyperactive disorder, and alcohol dependence.

### B. Procedural History

Plaintiff applied for Supplemental Security Income on April 21, 2014. Plaintiff's application was initially denied on September 10, 2014, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Julia D. Gibbs on April 19, 2016. (T. 24-51.) [3] On June 30, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.

---

[3] The Administrative Transcript is found at Dkt. No. 12. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

(T. 8-23.)  On September 21, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)

## C.    The ALJ's Decision

First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 21, 2014, the application date.  (T. 13.)  Second, the ALJ found that Plaintiff's history of knee surgery, history of left shoulder surgery, history of substance abuse, and epilepsy are severe impairments.  (*Id.*)  Third, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 14.)  Fourth, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work "except the job provides for seizure precautions, including avoiding sharp objects, moving machinery, unprotected heights, and driving."  (*Id.*)  Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work.  (T. 17.)  Sixth, the ALJ determined that Plaintiff can perform other jobs existing in significant numbers in the national economy.  (T. 18-19.)  The ALJ therefore concluded that Plaintiff is not disabled.

## D.    Arguments

### 1.    Plaintiff's Arguments

First, Plaintiff argues that the ALJ's assessment concerning the frequency of seizures is not supported by substantial evidence.  (Dkt. No. 13, at 11-26 [Pl.'s Mem. of

Law].) Specifically, Plaintiff argues that the ALJ mischaracterizes and cherry-picks evidence to support her conclusion that Plaintiff's seizures occur infrequently and does not cite any medical evidence or medical opinion questioning the frequency of Plaintiff's seizures or the frequency alleged by Plaintiff, or indicating that there are not one or more months in which he has more than one seizure per month. (*Id.* at 12-16.) Plaintiff contends that to be disabled considering the vocational expert's testimony, there need only be evidence that there are one or more months in which he has more than one seizure per month, rendering him unable to meet work pace and/or attendance requirements. (*Id.* at 12, 14-16.) Plaintiff argues that the ALJ failed to make any factual finding concerning the frequency of seizures and, to the extent the ALJ found he experienced no seizures beyond isolated breakthroughs, such a conclusion is not supported by substantial evidence. (*Id.* at 16.)

Second, Plaintiff argues that the ALJ failed to properly evaluate all of the available medical opinion evidence because she did not weigh all of the medical opinions of record, including opinions from non-physicians. (*Id.* at 16-21.) Specifically, Plaintiff argues that, although the ALJ mentioned the medical opinions from treating physician Thomas Mitchell, M.D., Kathy Machuga, NP, Sherrie Adler-Gribble, FNP-C, consultative examiner Justine Magurno, M.D., and consultative examiner Christine Ransom, Ph.D., the ALJ only weighed the opinions from Dr. Mitchell, Dr. Magurno, and Dr. Ransom, failing to address and/or weigh the opinions of the two treating nurse practitioners. (*Id.* at 17-18.) Plaintiff also argues that the ALJ failed to evaluate the opinion from NP Adler-Gribble, never acknowledging her June 2016 opinion despite

4

relying on her May 2015 statement regarding non-compliance with medication and substance abuse.  (*Id.* at 16, n. 4, 17-18.)  Plaintiff contends this is significant error because there is a reasonable probability that, "had the ALJ properly considered this evidence, there could have been a different result because NP Adler-Gribble's most recent opinion is directly contrary to the ALJ's conclusions."  (*Id.* at 18.)  Similarly, Plaintiff argues that the ALJ briefly mentioned NP Machuga's opinion but never weighed it using the regulatory factors.  (*Id.* at 17-18.)

Regarding Dr. Mitchell's opinion, Plaintiff argues the ALJ erred in giving little weight to the opined moderate limitations in the ability to work at a consistent pace (noting "such a finding is consistent with a severe mental impairment, which is not supported by the record") because Dr. Mitchell's "opinion in this regard was not based on Plaintiff's psychiatric impairments, but is solely based on Plaintiff's seizure disorder." (*Id.* at 18-19.)  Plaintiff contends the ALJ failed to provide good reasons for rejecting this treating source opinion or failing to analyze the opinion by applying regulatory factors, and that the ALJ inappropriately failed to acknowledge that, if Plaintiff experiences a seizure, he cannot work at a consistent pace or at all for the "duration of the ensuing postictal period."  (*Id.* at 19.)  Plaintiff also argues the ALJ may not arbitrarily substitute her opinion for that of competent medical opinion, and that because the ALJ did not purport to rely on any medical opinion inconsistent with Dr. Mitchell's opinion (particularly regarding work pace), her conclusion is not supported by substantial evidence.  (*Id.* at 19-20.)

Similarly, regarding Dr. Magurno's opinion, Plaintiff argues that the ALJ rejected opined limitations to reaching, pushing, and pulling without citing contrary medical opinion and improperly substituted her opinion for Dr. Magurno's. (*Id.* at 20-21.) Plaintiff also argues this error is prejudicial because the ALJ did not account for any limitations to reaching, pushing or pulling in the RFC or in the hypothetical question posed to the vocational expert ("VE") and all the jobs identified the VE identified require frequent reaching. (*Id.* at 21.)

Third, Plaintiff argues that the ALJ improperly relied on Plaintiff's activities of daily living in discounting the severity of his impairments because the ALJ failed to acknowledge that during a seizure or for the postictal period thereafter, Plaintiff cannot engage in activities of daily living. (*Id.* at 21.)

Fourth, Plaintiff argues that the ALJ's Step Five determination is not supported by substantial evidence because the RFC and the related hypothetical question posed to the VE do not properly account for Plaintiff's true limitations (regarding frequency of seizures, limitations to work pace and absenteeism, pushing, pulling, reaching, and/or his psychiatric impairments) and the resulting VE testimony is unreliable and unable to constitute substantial evidence. (*Id.* at 21-22.)

**2.      Defendant's Arguments**

First, Defendant argues that substantial evidence supports the finding that Plaintiff's seizure condition was not totally disabling because the ALJ reasonably found the record did not support seizures at a frequency and severity that would preclude

substantial gainful activity over a period of at least 12 months. (t. No. 14, at 9-18 [Def.'s Mem. of Law].) Regarding Plaintiff's assertion that there need only be evidence that there are one or more months in which he has more than one seizure per month, Defendant argues Plaintiff cites no authority supporting this formulation and contends the ALJ considered the fact that Plaintiff's reported seizures correlated with periods in which he was noncompliant with medications, but the reports were less frequent over longitudinal periods when he was taking his medications at a therapeutic level. (*Id.* at 10-11.) Defendant argues an episodic aspect of an impairment such as epilepsy does not mean it is totally disabling. (*Id.* at 11.) Defendant points out that Plaintiff's seizures began when he was 16, but that he worked as an adult for many years. (*Id.*)

In response to Plaintiff's arguments regarding NP Adler-Gribble's June 2014 treatment note, Defendant contends that even if it was error for the ALJ to attribute this note to Caren Douenias, M.D. (NP Adler-Gribble's supervisor), Plaintiff identifies no reason why this would be material to the underlying content observed in this note -- that Plaintiff's seizure medication level was at odds with his prescribed medication dosage. (*Id.* at 11-12.) Defendant argues it was reasonable for the ALJ to reason that the provider questioned the frequency of seizures because she refused to support a disability claim without knowing his seizure frequency or compliance with treatment. (*Id.* at 12.)

Defendant argues that Plaintiff acknowledges that the record says nothing about the frequency of his seizures and that Plaintiff seeks to rely on lack of evidence to corroborate his seizure frequency, whereas the ALJ considered such a lack of evidence

as undermining Plaintiff's claim. (*Id*. at 12-13.) Defendant contends that, because total disability is never the default presumption, relying on a lack of evidence to corroborate a total disability claim is reasonable and within the discretion of the factfinder. (*Id*. at 9-10, 13.) Defendant also argues the ALJ accurately observed that a study done when Plaintiff's seizure medications were discontinued showed evidence of epilepsy, but no actual seizure episodes, and, thus, nothing to corroborate the claim that Plaintiff had seizures at a totally disabling frequency. (*Id*. at 13, 17.) Defendant argues that Plaintiff's contention regarding witnesses to his seizures does not confirm that his seizures were so frequent in the relevant period as to be totally disabling over a period of at least 12 months, nor do these observations equate to seizures witnessed in a clinical setting by a medical professional. (*Id*. at 14.) Defendant contends further that Plaintiff's argument skirts the distinction between subjective reports (at times from periods of alcohol and marijuana abuse) and objective observations. (*Id*. at 14-15.) Defendant also argues there is ample evidence contradicting the claim that Plaintiff had totally disabling seizures, including NP Adler-Gribble's statements indicating that Plaintiff's condition could be completely controlled, people with epilepsy can work, and she believed he could work. (*Id*. at 15-17.) Defendant additionally contends Dr. Magurno opined Plaintiff should avoid activities in which he or others could be injured if he had a seizure, but did not assess other relevant restrictions, and that the RFC accounts for these seizure precautions. (*Id*. at 15.)

Defendant argues that NP Adler-Gribble only indicated Plaintiff could not maintain gainful employment (an issue reserved to the Commissioner) after he reported

8

that he had ongoing uncontrolled seizures despite taking medications. (*Id.* at 16.)

Regarding the ALJ's lack of discussion regarding these June 2016 statements,

Defendant argues such statements are nothing more than a bare endorsement of

Plaintiff's pursuit of a disability claim based on his subjective description of his condition

at that time, noting that a month earlier, NP Adler-Gribble indicated Plaintiff could work

despite his seizures. (*Id.* at 17.) Rather than changing her opinion, Defendant argues

NP Adler-Gribble stated she felt Plaintiff could not maintain employment while his

seizures were uncontrolled but believed they could be completely controlled and Plaintiff

would be able to return to the workforce. (*Id.*) Defendant contends NP Adler-Gribble's

statements confirm that Plaintiff's condition would not preclude work over a period of at

least 12 months and further show that an RFC for sedentary work with appropriate

seizure precautions accounts for all of Plaintiff's credibly-established longitudinal

limitations. (*Id.* at 17-18.)

Second, Defendant argues that the weight of the opinion evidence contradicts

Plaintiff's claim of total disability. (*Id.* at 18-22.) Regarding NP Machuga's letter,

Defendant argues nothing in it contradicts the ALJ's decision. (*Id.* at 18-19.) Turning to

NP Adler-Gribble's statements, Defendant again asserts that they do not support the

claim of total disability as Plaintiff characterizes it and that the May 2016 questionnaire

contradicted the disability claim. (*Id.* at 19-21.) Regarding Dr. Mitchell's opinions,

Defendant argues the ALJ noted Dr. Mitchell was a family practitioner, considered the

forms he completed, and specifically noted Dr. Mitchell referred to Plaintiff's seizures as

being poorly controlled. (*Id.* at 20.) Defendant contends Plaintiff actually concedes that

9

Dr. Mitchell's responses should only be interpreted as limited to the occurrence of a seizure episode and the period immediately after such an episode and that if Dr. Mitchell's responses are interpreted in this matter, they do not contradict the ALJ's RFC finding and decision. (*Id.* at 20-22.) Defendant also argues the ALJ found Dr. Magurno's opined limitations in reaching, pushing, and pulling unpersuasive, but did sufficiently consider Plaintiff's left shoulder condition. (*Id.* at 21-22.)

Third, Defendant argues that the ALJ reasonably considered Plaintiff's activities of daily living. (*Id.* at 22-23.) Defendant contends that evidence a claimant engages in a wide range of activities reasonably tends to weigh against a claim of a totally disabling condition and "such evidence does not need to refute the claim of total disability to a degree of logical impossibility before a reasonable factfinder is permitted to take it into account." (*Id.* at 23.)

Fourth, Defendant argues the ALJ reasonably relied on the VE testimony. (*Id.* at 23-25.) Defendant argues Plaintiff's contention that the RFC finding concludes he would never have a seizure is a misrepresentation and the RFC finding reflects that, when considering longitudinal functioning over a period of at least 12 months, Plaintiff's condition would not preclude him from performing a range of sedentary work in an ordinary work setting. (*Id.* at 24-25.)

## II.    LEGAL STANDARDS

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health &*

*Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court

11

must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can

be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).


## III.    ANALYSIS

### A.    Whether Substantial Evidence Supports the ALJ's Assessment of Medical and Opinion Evidence and Plaintiff's Activities and RFC

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 416.927(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'"  *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the

13

consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 416.927(c)(1)-(6). Additionally, when weighing opinions from sources who are not considered "medically acceptable sources"[4] under the regulations, the ALJ must consider the same factors as used for evaluating opinions from medically acceptable sources. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (citing *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)); Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939.

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient

---

[4]     Medically acceptable sources are noted to include the following: licensed physicians; licensed or certified psychologists; licensed optometrists; licensed podiatrists; and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

14

specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Here, the ALJ found that Plaintiff can perform a modified range of sedentary work. (T. 14.) In so doing, the ALJ considered the medical evidence of record and Plaintiff's reports and testimony as well as the various opinions of record. (T. 14-17.). In a February 2014, assessment, treating physician Dr. Mitchell noted Plaintiff's permanent seizure disorder with then poorly-controlled seizures. (T. 418-19.) Dr. Mitchell opined that Plaintiff was very limited his ability to climb stairs or other climbing and moderately limited in carrying out instructions and functioning in a work setting at a consistent pace, noting these restrictions were permanent. (T. 419.) He also noted that he expected Plaintiff's seizure control to improve because he had been off medications previously. (*Id.*) In April 2014, Dr. Mitchell again noted Plaintiff's permanent seizure disorder with then poorly-controlled seizures and again opined that Plaintiff was very limited in climbing, moderately limited in carrying out instructions, and appeared capable – though moderately limited -- of functioning in a work setting at a consistent pace on a permanent basis. (T. 417.) Citing Dr. Mitchell's April 2014 assessment, the ALJ afforded little weight to Dr. Mitchell's determination that Plaintiff was moderately limited in his ability to carry out instructions and work at a consistent pace, concluding that such a finding was consistent with a severe mental impairment, which the ALJ determined was not supported by the record. (T. 17.)

In an April 2014 letter, treating source NP Machuga indicated it was medically advisable that Plaintiff had a history of seizures and once he had a seizure, he was to

rest the entire day. (T. 546.) She further stated that he was not medically-able to attend any appointments the day of a seizure. (*Id.*) The ALJ noted NP Machuga's indication that Plaintiff must rest the entire day once he has a seizure but did not otherwise state how this finding was considered in determining Plaintiff's limitations and the ultimate RFC, nor did the ALJ indicate the weight, if any, he afforded to this opinion. (T. 15, 17.)

In August 2014, Dr. Magurno performed a consultative internal medicine examination (T. 494-96). Dr. Magurno observed tenderness in the left shoulder and clavicle and limited range of motion in abduction of the shoulders and external rotation of the left shoulder. (T. 494-96.) Dr. Magurno diagnosed seizure disorder, insomnia, left shoulder injury, history of depression and explosive disorder, and history of alcohol dependence. (T. 496.) She opined that Plaintiff should avoid activities in which he or others could be injured if he had a seizure, and concluded that he had mild limitations for reaching, pushing, and pulling. (*Id.*) The ALJ afforded little weight to Dr. Magurno's conclusion that Plaintiff has mild limitations in reaching, pushing and pulling, noting her examination revealed full flexion, extension, and lateral flexion bilaterally. (T. 17.)

In September 2014, Dr. Ransom performed a psychiatric consultative examination. (T. 501) Dr. Ransom diagnosed bipolar disorder (mild) and alcohol and marijuana dependence in early remission. (T. 501.) Dr. Ransom indicated that Plaintiff would have no difficulty following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration for simple tasks, maintaining a simple regular schedule and learning simple new tasks; and

16

would have mild difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress due to mild bipolar disorder. (T. 500.) She indicated that the results of the evaluation were consistent with the absence of a cognitive defect which would interfere with Plaintiff's ability to function on a daily basis and consistent with a mild psychiatric difficulty which would mildly interfere with his ability to function on a daily basis. (*Id.*) The ALJ afforded partial weight to Dr. Ransom's conclusion that Plaintiff has mild difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress due to bipolar disorder. (T. 17.) The ALJ indicated that the record did not support a finding of mild difficulties in concentrating, and noted that, nonetheless, Plaintiff's report of anger and temper issues were consistent with Dr. Ransom's finding regarding social functioning. (*Id.*)

In an April 2016, questionnaire, Dr. Mitchell noted Plaintiff's epilepsy, alcohol abuse, shoulder pain, knee pain, and lumbar radiculopathy. (T. 583.) He opined that Plaintiff's conditions would cause pain, fatigue, diminished concentration and work pace, and a need to rest at work. (*Id.*) He also opined Plaintiff would be off-task greater than 20 percent, but less than 33 percent of the time, and that side effects from medication caused fatigue and mental fogginess. (T. 583-84.) Though the ALJ's decision cites Exhibit 15F which includes this questionnaire, the ALJ does not address the opined limitations or indicate what weight, if any, was afforded to this opinion in considering Plaintiff's impairments and determining his RFC. (T. 16-17.)

In a May 2016, questionnaire, NP Adler-Gribble noted Plaintiff's epilepsy, longstanding history and current use of alcohol and marijuana as well as medication

non-compliance (which she noted created difficulty in his treatments). (T. 622.) She opined that his conditions would cause pain, fatigue, diminished concentration and work pace, and a need to rest at work. (*Id.*) He would be off-task 10 percent or less with his conditions producing good and bad days and one absence or less per month. (T. 622-23.) NP Adler-Gribble noted Plaintiff's report of three seizures since last his visit and that she had adjusted his medications accordingly. (T. 623.) She also opined that people with epilepsy can work, and that Plaintiff had other factors that altered his treatment course. (*Id.*) The ALJ noted this opinion from a treating nurse practitioner stated Plaintiff's non-compliance and marijuana use had altered his treatment course, but did not otherwise indicate how NP Adler-Gribble's assessment was considered in determining Plaintiff's limitations and the ultimate RFC, nor did the ALJ indicate the level of weight, if any, he afforded to this opinion. (T. 17.)

In a medical source statement pertaining to seizures dated June 9, 2016, Dr. Mitchell indicated he had been treating Plaintiff two to four times per year since February 2014 and noted Plaintiff's convulsive seizures with loss of consciousness. (T. 632.) Dr. Mitchell noted that Plaintiff did not always have a warning of an impending seizure and could not always take safety precautions when a seizure began; he indicated the average frequency of seizures was variable. (*Id.*) Dr. Mitchell identified symptoms associated with Plaintiff's seizure disorder including tongue bites, other injuries, and a postictal state with confusion, irritability, aggression for hours, and the need to rest for hours after a seizure. (T. 633.) He opined that the seizures severely interfered with Plaintiff's daily activities following a seizure and that Plaintiff was

18

incapable of even low-stress work.  (*Id.*)  Dr. Mitchell indicated Plaintiff was not always compliant with medication, but that his recent levels were therapeutic.  (T. 634.)  He noted Plaintiff abused alcohol or street drugs, but would continue to have seizures despite abstinence from alcohol or street drugs.  (*Id.*)  Dr. Mitchell noted Plaintiff also had mental problems including depression, irritability, and social isolation, and would need to take unscheduled breaks every few hours for half an hour due to pain.  (T. 635.)  He opined Plaintiff's conditions were likely to produce good days and bad days causing absences more than four days per month.  (T. 635.)  Despite the inclusion of this opinion (Exhibit 19F) in the ALJ's list of exhibits, Dr. Mitchell's opinion is not mentioned or cited in her decision, nor does she indicate what weight, if any, she afforded to it in assessing Plaintiff's impairments or determining his RFC.  (T. 14-17, 20-23.)

Included in Exhibit 19F is a June 2, 2016, treatment note from NP Adler-Gribble, noting Plaintiff was taking Trileptal as prescribed, but continued to have intermittent breakthrough seizures.  (T. 636.)  In that same treatment note, NP Adler-Gribble stated that, due to Plaintiff's continued breakthrough seizures despite taking medications, she did not believe he could be gainfully employed.  (T. 637-38.)  She also indicated that Plaintiff should be able to return to the workforce, but that a return would be delayed due to his seizures (which she believed could be completely controlled).  (T. 638.)  Again, the ALJ's decision does not mention or cite Exhibit 19F, nor does it indicate what weight, if any, was afforded to this assessment from treating source NP Adler-Gribble.  (T. 14-17.)

Plaintiff presents several arguments alleging that the ALJ erred by improperly considering his impairments and the evidence of record in determining his RFC. (Dkt. No. 13, at 11-22 [Pl.'s Mem. of Law].) The Court finds that the ALJ's RFC and related analysis are not supported by substantial evidence to the extent that the ALJ failed to properly consider the opinions from Dr. Mitchell, NP Adler-Gribble, and NP Machuga for the following reasons.[5]

First, as Plaintiff argues, although the ALJ mentioned medical opinions from Dr. Mitchell, NP Machuga, and NP Adler-Gribble, the ALJ only explicitly weighed opinions from Dr. Mitchell, Dr. Magurno, and Dr. Ransom. (Dkt. No. 13, at 17-18 [Pl.'s Mem. of Law]; T. 14-17.) Second, aside from brief allusions to the statements from NP Machuga and NP Adler-Gribble, the ALJ's decision does not contain sufficient explanation of her consideration of these treating source opinions. "Opinions from medical sources that are not considered acceptable medical sources are 'important and should be evaluated on key issues such as impairment severity and functional effects.'" *Saxon*, 781 F. Supp. 2d at 103 (quoting *Anderson v. Astrue,* 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009) (internal citations omitted). As the Court noted in *Saxon*, "[w]hile the ALJ is empowered with the discretion to afford less than controlling weight, or even no weight, to the opinion of 'other sources', the ALJ has a duty to address and discuss the

---

[5] The Court declines to reach Plaintiff's arguments pertaining to the ALJ's alleged mischaracterizations and "cherry-picking" of the evidence, substitution of her own lay opinion, or reliance on Plaintiff's activities of daily living in discounting the severity of his impairments as well as the ALJ's consideration of the alleged frequency of Plaintiff's seizures. (Dkt. No. 13, at 11-22 [Pl.'s Mem. of Law].) However, on remand, the ALJ should consider the entirety of the record and reach an RFC supported by substantial evidence.

opinion." *Id.* at *104 (citing *Lopez v. Barnhart,* 05-CV-10635, 2008 WL 1859563, at *15 (S.D.N.Y.2008)).

As indicated, the ALJ failed to indicate what weight, if any, she afforded to NP Machuga's April 2014 assessment. (T. 15-17.) Similarly, although she mentioned and cited NP Adler-Gribble's May 2016, assessment at Exhibit 16F, the ALJ did so only to note that NP Adler-Gribble observed Plaintiff was non-compliant with medication and that his marijuana use had altered his treatment course. (T. 17.) The ALJ failed to otherwise discuss or weigh this opinion, which included the indications that Plaintiff's conditions would cause pain, fatigue, diminished concentration and work pace, a need to rest at work, that he would be off-task 10 percent or less with his conditions producing good and bad days, and that he would have one absence or less per month. (T. 622-23.) The ALJ likewise fully failed to mention or assess NP Adler-Gribble's June 2016 assessment, contained within a treatment note in Exhibit 19F, which indicated that Plaintiff continued to have intermittent breakthrough seizures despite taking Trileptal as prescribed, and, because of this, she did not believe he could engage in gainful employment. (T. 636-38.) Regardless whether this assessment opined on an issue reserved to the Commissioner, as Defendant argues, the ALJ was required to properly consider and weight this opinion appropriately, with sufficient explanation to allow this Court to review her analysis of the opinion. (Dkt. No. 14, at 16 [Def.'s Mem. of Law].)

Finally, it is particularly troubling to the Court that the ALJ's decision fails to discuss in any meaningful way the April 2016 and June 2016 opinions from treating physician Dr. Mitchell, an acceptable medical source. This is a fact that the ALJ

21

seemingly acknowledged when she pointed out that Dr. Mitchell was a family practitioner and weighed his April 2014 assessment that Plaintiff was moderately limited in his ability to carry out instructions and work at a consistent pace.  (T. 14-17, 416-17, 583-84, 632-35.)  The Court notes that the ALJ indicates in her decision that Exhibits 11F-17F were submitted by Plaintiff's representative and the entire record was considered, (T. 11.)  The Court also notes that the ALJ's exhibit list attached to her decision includes Exhibit 19F, indicating it had been submitted prior to her decision and was among the evidence to be considered.  (T. 23.)

The ALJ's failure to even mention the June 9, 2016, opinion from Dr. Mitchell -- which the Court notes includes disabling opined limitations) --contained in Exhibit 19F, much less indicate the weight, if any, she afforded to it leaves this Court unable to determine whether the ALJ reviewed this opinion.  (T. 14-17.)  The ALJ is required to provide rationale in the written decision sufficient to permit this Court to conduct an adequate review of her findings.  *See Booker v. Astrue*, 07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris*, 728 F.2d at 587); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).  Given the identified errors above, the Court is unable to do so here.  For the above reasons, the Court is unable to discern with clarity that

22

substantial evidence supports the ALJ's analysis of the opinion evidence and resulting RFC determination. Thus, remand is required on this basis.

## B.    Step Five Finding

As the Court finds that remand is necessary, and the Commissioner will be required to address the above-noted deficiencies in considering the opinion evidence, the Court declines to reach a finding on Plaintiff's arguments regarding the ALJ's Step Five finding.  (Dkt. No. 13, at 21-22 [Pl.'s Mem. of Law].)  However, on remand, should this matter be referred to an ALJ, the ALJ is to conduct a new Step Five determination.

## IV.  CONCLUSION

**WHEREFORE**, for the reasons detailed herein, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for proceedings consistent with this Decision and Order.

**IT IS SO ORDERED.**

Dated: March 13, 2019
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge